UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MPICHIGAN
SOUTHERN DIVISION

---

PAT CARLOTTO,

        Plaintiff,

  v.

CITY OF SOUTH HAVEN,

        Defendant.

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 W. Main St., Ste. 618
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

---

# C O M P L A I N T

Plaintiff Pat Carlotto alleges the following for his complaint against Defendant City of South Haven.

## NATURE OF THE CASE

1. This is an employment case about retaliation.

2. Plaintiff Pat Carlotto works as a sergeant with Defendant's police department, and he previously participated in Title VII litigation that one of his fellow police officers brought against Defendant. He also opposed Defendant's treatment of that officer and its discrimination and retaliation against her.

3. Carlotto then applied for a chief of police vacancy with Defendant, but Defendant refused to permanently hire him for the job despite his vastly superior qualifications, credentials,

and experience.

4. Instead, Defendant hired candidates that should have never been hired over Carlotto, and each of these candidates lasted less than two months on the job (and one of them did not even make it a month).

5. Defendant further admitted that it would not hire Carlotto for the chief of police position because of his Title VII litigation participation and his opposition to Defendant's discrimination and retaliation. Defendant admitted that it would not hire Carlotto as chief of police because it felt that he had "some trust issues" and "too much baggage." The "trust issues" and "baggage" could only refer to Carlotto's participation in the Title VII litigation and his opposition to Defendant's discrimination and retaliation against his coworker.

6. Defendant's retaliatory actions and its refusal to hire Carlotto as chief of police violated Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act. Carlotto suffered damages as a result of Defendant's retaliation that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Pat Carlotto is an individual person who resides in Allegan County, Michigan.

8. Defendant City of South Haven is a municipality located in Van Buren County, Michigan.

9. The Court has personal jurisdiction over Defendant under Michigan Compiled Laws Sections 600.711 and 600.715. FED. R. CIV. P. 4(k)(1)(A).

10. The Court has original subject matter jurisdiction over the claims asserted in the complaint under Title VII of the Civil Rights Act of 1964 in accordance with Title 28 of the

United States Code, Section 1331, because those claims arise under federal law. Title VII also independently affords subject matter jurisdiction in the federal courts. 42 U.S.C. § 2000e–5(f)(3).

11. The Court has supplemental jurisdiction over the state law claims asserted in the complaint under Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

12. Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

## GENERAL ALLEGATIONS

13. In 2022, one of Defendant's police officers sued Defendant for discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

14. The case was filed in the United States District Court for the Western District of Michigan and titled as *Michaela Pauly v. City of South Haven and Natalie Thompson*, Case No. 22-307.

15. Carlotto has worked for Defendant's police department as a law enforcement officer since 1999. He has held the position of sergeant since 2005.

16. Carlotto participated in the litigation against Defendant (*Pauly v. City of South Haven*, *et al.*), and he supported his colleague and opposed the unlawful, discriminatory, and retaliatory treatment that Pauly endured.

17. In connection with the *Pauly* litigation, Carlotto met with Defendant's attorneys and explained how Pauly had been unlawfully discriminated against and how she had been unlawfully retaliated against. Carlotto also provided evidence and information critical of Defendant and how it had treated Pauly.

18. Carlotto similarly met with Pauly's attorney and explained how Pauly had been

unlawfully discriminated against and unlawfully retaliated against. Carlotto also provided evidence and information critical of Defendant and how it had treated Pauly.

19. Pauly also listed Carlotto on her initial disclosures as a witness in the *Pauly* litigation.

20. In 2024, the chief of police position for Defendant's police department became available.

21. Defendant appointed Carlotto to serve as the interim chief of police in September 2024.

22. In October 2024, Carlotto applied for the permanent appointment to the chief of police position.

23. In November 2024, Defendant held a public forum with the chief of police candidates as part of the application process.

24. Carlotto participated in the public forum and, among other things, discussed his participation in the *Pauly* litigation. Carlotto explained that he did not agree with the way that Defendant had treated Pauly and thought that Defendant had treated Pauly unfairly, discriminated against her, and retaliated against her.

25. Carlotto's participation in the *Pauly* litigation and his public opposition for the way she had been discriminated against and retaliated against admittedly "did not sit well" with Defendant.

26. In December 2024, Defendant hired Kevin Swope (and not Carlotto) as its chief of police.

27. Carlotto returned to his sergeant position within Defendant's police department.

28. Swope started as the chief of police in January 2025.

29. In February 2025—just about one month into the job—Swope resigned as Defendant's chief of police.

30. While departing the chief of police position with Defendant, Swope recommended that Defendant permanently appoint Carlotto as its chief of police.

31. Other law enforcement officers (current and former), city officials, and community members have also recommended that Defendant permanently appoint Carlotto as the chief of police.

32. Defendant refused to do so, but again appointed Carlotto as interim chief of police.

33. In March 2025, Defendant announced that it would hire Dennis Honholt as its incoming chief of police, and Defendant held a meet-and-greet event for Honholt later that month.

34. At the event, Honholt stated that he was still employed by another police department and he would remain employed by that other police department for 90 days. Honholt made this statement to Carlotto, Defendant's city manager, Defendant's human resources director, and others.

35. Honholt began to work as the chief of police for Defendant in April 2025, but still (inexplicably) had not resigned his employment with the other police department.

36. Carlotto again returned to his sergeant position within Defendant's police department.

37. Later in April 2025, Honholt resigned from the chief of police position with Defendant because he had not resigned his employment with the other police department.

38. In April 2025, Defendant appointed Adam DeBoer as its interim chief of police,

and he remained in that position on an interim basis until November 24, 2025, at which point Defendant permanently appointed DeBoer as chief of police.

39. Carlotto worked as the interim chief of police on two different occasions for Defendant and he performed the job well.

40. Carlotto also had qualifications, credentials, and experience that far exceeded the persons Defendant hired as its chief of police.

41. Defendant, however, refused to permanently appoint Carlotto to the chief of police position despite his vastly superior qualifications, credentials, and experience.

42. Defendant never provided Carlotto with a specific reason why it had refused to hire him for the chief of police position other than to state that it has "some trust issues" with him.

43. Carlotto has served in Defendant's police department for over 26 years with honor and integrity, and he has otherwise enjoyed a decorated and exemplary career in law enforcement with many commendations for his work. There is no discipline in Carlotto's personnel file with Defendant, and Defendant's "trust issues" undoubtedly referred to his participation in the *Pauly* litigation and his opposition to Defendant's discrimination and retaliation.

44. Defendant has also admitted that it "would never promote" Carlotto for the chief of police position "due to personal reasons" and because he had "too much baggage," which were rather obvious references to Carlotto's participation in the *Pauly* litigation and his opposition to Defendant's discrimination and retaliation.

45. Carlotto filed a charge of discrimination with the United States Equal Employment Opportunity Commission and has otherwise satisfied all administrative prerequisites to filing his causes of action.

46. Carlotto also applied for a deputy chief of police position with Defendant's police department.

47. Carlotto is the only candidate for the deputy chief of police position.

48. In October 2025, Defendant told Carlotto that it would not hire him for the deputy chief of police position if he proceeded with this lawsuit.

## COUNT 1
### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

49. Carlotto repeats and incorporates all the previous allegations in his complaint.

50. Carlotto engaged in activity protected by Title VII when he, among other things, participated in the *Pauly* litigation, pursued his EEOC charge and this litigation, and opposed the discrimination and retaliation that Pauly suffered in Defendant's workplace.

51. Defendant knew about Carlotto's opposition and protected activity.

52. Defendant treated Carlotto differently in connection with the terms and conditions of his employment and refused to permanently hire Carlotto for the chief of police position or the deputy chief of police position.

53. Defendant would not have taken these adverse actions against Carlotto but for his protected activity.

54. Carlotto suffered damages as a result of Defendant's violations of Title VII, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 2
### RETALIATION IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

55. Carlotto repeats and incorporates all the previous allegations in his complaint.

56. Carlotto engaged in activity protected by Michigan's Elliott-Larsen Civil Rights Act when he, among other things, participated in the *Pauly* litigation, pursued his EEOC charge and this litigation, and opposed the discrimination and retaliation that Pauly suffered in Defendant's workplace.

57. Defendant knew about Carlotto's opposition and protected activity.

58. Defendant treated Carlotto differently in connection with the terms and conditions of his employment and refused to permanently hire Carlotto for the chief of police position and the deputy chief of police position.

59. There was a causal connection between Carlotto's protected activity and the adverse employment actions Defendant took against him.

60. Carlotto suffered damages as a result of Defendant's violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## JURY DEMAND

61. Carlotto demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

## RELIEF REQUESTED

62. Plaintiff Pat Carlotto requests that the Court enter a judgment in his favor and against Defendant City of South Haven in an amount that will fully and fairly compensate him for all of his damages, losses, expenses, back wages, emotional distress, punitive damages, attorney's fees, litigation costs, and interest.

63. Carlotto also requests that the court grant him any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

- 9 -

                                                          PAT CARLOTTO

Dated: November 24, 2025        By:   /s/  Mark S. Wilkinson

                                                   Mark S. Wilkinson (P68765)
                                                   PALADIN EMPLOYMENT LAW PLLC
                                                   *Attorney for Plaintiff*
                                                   5955 W. Main St., Ste. 618
                                                   Kalamazoo, MI 49009
                                                   (tel.) 269.978.2474
                                                   mark@paladinemploymentlaw.com