UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAT CARLOTTO,                                       Case No. 1:25-cv-01557-PLM-PJG

            Plaintiff,                                    Honorable Paul L. Maloney

v                                                   Magistrate Judge Philip J. Green

CITY OF SOUTH HAVEN,

            Defendant.

_____/

| | |
|---|---|
| PALADIN EMPLOYMENT LAW, PLLC<br>Mark S. Wilkinson (P68765)<br>*Attorney for Plaintiff*<br>5955 W. Main St., Ste. 618<br>Kalamazoo, MI 49009<br>(269) 978-2474<br>mark@paladinemploymentlaw.com | ROSATI,    SCHULTZ,    JOPPICH    &<br>AMTSBUECHLER, P.C.<br>Andrew J. Brege (P71474)<br>*Attorney for Defendant*<br>822 Centennial Way, Ste. 270<br>Lansing, MI 48917<br>(517) 886-3800<br>abrege@rsjalaw.com |

_____/

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT WITH DEFENDANT'S
AFFIRMATIVE AND OTHER DEFENSES**

NOW COMES Defendant, City of South Haven, through counsel, ROSATI, SCHULTZ,

JOPPICH & AMTSBUECHLER, P.C., and in response to Plaintiff's Complaint, hereby states as

follows:

**NATURE OF THE CASE**

1.      This is an employment case about retaliation.

**ANSWER:   Admitted only that Plaintiff has made such an allegation.  Denied as untrue**

**that any actionable retaliation occurred.**

2.      Plaintiff Pat Carlotto works as a sergeant with Defendant's police department, and

he previously participated in Title VII litigation that one of his fellow police officers brought

against Defendant. He also opposed Defendant's treatment of that officer and its discrimination and retaliation against her.

**ANSWER:    Denied in the manner and form alleged as untrue.**

3.    Carlotto then applied for a chief of police vacancy with Defendant, but Defendant refused to permanently hire him for the job despite his vastly superior qualifications, credentials, and experience.

**ANSWER:    Admitted only that Plaintiff was not selected as chief of police for Defendant City of South Haven after his application.  All remaining allegations are denied as untrue.**

4.    Instead, Defendant hired candidates that should have never been hired over Carlotto, and each of these candidates lasted less than two months on the job (and one of them did not even make it a month).

**ANSWER:    Admitted only that Plaintiff was not selected as chief of police for Defendant City of South Haven.**

5.    Defendant further admitted that it would not hire Carlotto for the chief of police position because of his Title VII litigation participation and his opposition to Defendant's discrimination and retaliation. Defendant admitted that it would not hire Carlotto as chief of police because it felt that he had "some trust issues" and "too much baggage." The "trust issues" and "baggage" could only refer to Carlotto's participation in the Title VII litigation and his opposition to Defendant's discrimination and retaliation against his coworker.

**ANSWER:    Denied in the manner and form alleged as untrue.**

6.    Defendant's retaliatory actions and its refusal to hire Carlotto as chief of police violated Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act. Carlotto suffered damages as a result of Defendant's retaliation that include, but are not limited to,

back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

**ANSWER:    Denied as the same is untrue.**

### PARTIES, JURISDICTION, AND VENUE

7.    Plaintiff Pat Carlotto is an individual person who resides in Allegan County, Michigan.

**ANSWER:    Upon information and belief, admitted.**

8.    Defendant City of South Haven is a municipality located in Van Buren County, Michigan.

**ANSWER:    Admitted that Defendant City of South Haven is a municipality that is located, in part, in Van Buren County, Michigan.**

9.    The Court has personal jurisdiction over Defendant under Michigan Compiled Laws Sections 600.711 and 600.715. FED. R. CIV. P. 4(k)(1)(A).

**ANSWER:    Defendant does not contest personal jurisdiction.**

10.    The Court has original subject matter jurisdiction over the claims asserted in the complaint under Title VII of the Civil Rights Act of 1964 in accordance with Title 28 of the United States Code, Section 1331, because those claims arise under federal law. Title VII also independently affords subject matter jurisdiction in the federal courts. 42 U.S.C. § 2000e–5(f)(3).

**ANSWER:    Defendant does not contest subject matter jurisdiction.**

11.    The Court has supplemental jurisdiction over the state law claims asserted in the complaint under Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

**ANSWER:     Defendant does not contest supplemental jurisdiction.**

12.     Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

**ANSWER:     Defendant does not contest venue.**

## GENERAL ALLEGATIONS

13.     In 2022, one of Defendant's police officers sued Defendant for discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

**ANSWER:     Admitted that Michaela Pauly made such allegations.**

14.     The case was filed in the United States District Court for the Western District of Michigan and titled as Michaela Pauly v. City of South Haven and Natalie Thompson, Case No. 22-307.

**ANSWER:     Admitted.**

15.     Carlotto has worked for Defendant's police department as a law enforcement officer since 1999. He has held the position of sergeant since 2005.

**ANSWER:     Admitted.**

16.     Carlotto participated in the litigation against Defendant (Pauly v. City of South Haven, et al.), and he supported his colleague and opposed the unlawful, discriminatory, and retaliatory treatment that Pauly endured.

**ANSWER:     Denied in the manner and form alleged as untrue.**

17.     In connection with the Pauly litigation, Carlotto met with Defendant's attorneys and explained how Pauly had been unlawfully discriminated against and how she had been unlawfully retaliated against. Carlotto also provided evidence and information critical of Defendant and how it had treated Pauly.

**ANSWER:    Denied in the manner and form alleged as untrue.**

18.    Carlotto similarly met with Pauly's attorney and explained how Pauly had been unlawfully discriminated against and unlawfully retaliated against. Carlotto also provided evidence and information critical of Defendant and how it had treated Pauly.

**ANSWER:    Neither admitted nor denied as this Defendant lacks information sufficient to form a belief regarding this allegation.**

19.    Pauly also listed Carlotto on her initial disclosures as a witness in the Pauly litigation.

**ANSWER:    Admitted.**

20.    In 2024, the chief of police position for Defendant's police department became available.

**ANSWER:    Admitted.**

21.    Defendant appointed Carlotto to serve as the interim chief of police in September 2024.

**ANSWER:    Admitted.**

22.    In October 2024, Carlotto applied for the permanent appointment to the chief of police position.

**ANSWER:    Admitted.**

23.    In November 2024, Defendant held a public forum with the chief of police candidates as part of the application process.

**ANSWER:    Admitted.**

24.    Carlotto participated in the public forum and, among other things, discussed his participation in the Pauly litigation. Carlotto explained that he did not agree with the way that

5

Defendant had treated Pauly and thought that Defendant had treated Pauly unfairly, discriminated against her, and retaliated against her.

**ANSWER:    Neither admitted nor denied as this Defendant lacks information sufficient to form a belief regarding this allegation.**

25.    Carlotto's participation in the Pauly litigation and his public opposition for the way she had been discriminated against and retaliated against admittedly "did not sit well" with Defendant.

**ANSWER:    Denied in the manner and form alleged as untrue.**

26.    In December 2024, Defendant hired Kevin Swope (and not Carlotto) as its chief of police.

**ANSWER:    Admitted.**

27.    Carlotto returned to his sergeant position within Defendant's police department.

**ANSWER:    Admitted.**

28.    Swope started as the chief of police in January 2025.

**ANSWER:    Admitted.**

29.    In February 2025—just about one month into the job—Swope resigned as Defendant's chief of police.

**ANSWER:    Admitted only that Swope resigned.**

30.    While departing the chief of police position with Defendant, Swope recommended that Defendant permanently appoint Carlotto as its chief of police.

**ANSWER:    Upon information and belief, admitted.**

31.     Other law enforcement officers (current and former), city officials, and community members have also recommended that Defendant permanently appoint Carlotto as the chief of police.

**ANSWER:    Neither admitted nor denied as this Defendant lacks information sufficient to form a belief regarding this allegation.**

32.     Defendant refused to do so, but again appointed Carlotto as interim chief of police.

**ANSWER:    Admitted only that Plaintiff was appointed interim chief of police.**

33.     In March 2025, Defendant announced that it would hire Dennis Honholt as its incoming chief of police, and Defendant held a meet-and-greet event for Honholt later that month.

**ANSWER:    Admitted.**

34.     At the event, Honholt stated that he was still employed by another police department and he would remain employed by that other police department for 90 days. Honholt made this statement to Carlotto, Defendant's city manager, Defendant's human resources director, and others.

**ANSWER:    Neither admitted nor denied as this Defendant lacks information sufficient to form a belief regarding this allegation.**

35.     Honholt began to work as the chief of police for Defendant in April 2025, but still (inexplicably) had not resigned his employment with the other police department.

**ANSWER:    Neither admitted nor denied as this Defendant lacks information sufficient to form a belief regarding this allegation.**

36.     Carlotto again returned to his sergeant position within Defendant's police department.

**ANSWER:    Admitted.**

7

37.    Later in April 2025, Honholt resigned from the chief of police position with Defendant because he had not resigned his employment with the other police department.

**ANSWER:    Admitted only that Honholt resigned.**

38.    In April 2025, Defendant appointed Adam DeBoer as its interim chief of police, and he remained in that position on an interim basis until November 24, 2025, at which point Defendant permanently appointed DeBoer as chief of police.

**ANSWER:    Admitted.**

39.    Carlotto worked as the interim chief of police on two different occasions for Defendant and he performed the job well.

**ANSWER:    Admitted only that Carlotte worked as interim chief of police.**

40.    Carlotto also had qualifications, credentials, and experience that far exceeded the persons Defendant hired as its chief of police.

**ANSWER:    Denied in the manner and form alleged as untrue.**

41.    Defendant, however, refused to permanently appoint Carlotto to the chief of police position despite his vastly superior qualifications, credentials, and experience.

**ANSWER:    Admitted only that Defendant did not appoint Plaintiff as chief of police.**

42.    Defendant never provided Carlotto with a specific reason why it had refused to hire him for the chief of police position other than to state that it has "some trust issues" with him.

**ANSWER:    Denied in the manner and form alleged as untrue.**

43.    Carlotto has served in Defendant's police department for over 26 years with honor and integrity, and he has otherwise enjoyed a decorated and exemplary career in law enforcement with many commendations for his work. There is no discipline in Carlotto's personnel file with

8

Defendant, and Defendant's "trust issues" undoubtedly referred to his participation in the Pauly litigation and his opposition to Defendant's discrimination and retaliation.

**ANSWER:    Denied in the manner and form alleged as untrue.**

44.    Defendant has also admitted that it "would never promote" Carlotto for the chief of police position "due to personal reasons" and because he had "too much baggage," which were rather obvious references to Carlotto's participation in the Pauly litigation and his opposition to Defendant's discrimination and retaliation.

**ANSWER:    Denied in the manner and form alleged as untrue.**

45.    Carlotto filed a charge of discrimination with the United States Equal Employment Opportunity Commission and has otherwise satisfied all administrative prerequisites to filing his causes of action.

**ANSWER:    Admitted only that Plaintiff filed  a charge with the EEOC.**

46.    Carlotto also applied for a deputy chief of police position with Defendant's police department.

**ANSWER:    Admitted.**

47.    Carlotto is the only candidate for the deputy chief of police position.

**ANSWER:    Admitted only that Carlotto was one of two candidates that submitted an application win**

48.    In October 2025, Defendant told Carlotto that it would not hire him for the deputy chief of police position if he proceeded with this lawsuit.

**ANSWER:    Denied as the same is untrue.**

**COUNT 1**
**RETALIATION IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964**

49.     Carlotto repeats and incorporates all the previous allegations in his complaint.

**ANSWER:    Defendant similarly incorporates all prior answers.**

50.     Carlotto engaged in activity protected by Title VII when he, among other things, participated in the Pauly litigation, pursued his EEOC charge and this litigation, and opposed the discrimination and retaliation that Pauly suffered in Defendant's workplace.

**ANSWER:    Denied as the same is untrue.**

51.     Defendant knew about Carlotto's opposition and protected activity.

**ANSWER:    Denied as the same is untrue.**

52.     Defendant treated Carlotto differently in connection with the terms and conditions of his employment and refused to permanently hire Carlotto for the chief of police position or the deputy chief of police position.

**ANSWER:    Denied as the same is untrue.  By way of further answer, state that that this allegation could not have been made in good faith, and therefore, was asserted in violation of Fed. R. Civ. P. 11.**

53.     Defendant would not have taken these adverse actions against Carlotto but for his protected activity.

**ANSWER:    Denied as the same is untrue.  By way of further answer, state that that this allegation could not have been made in good faith, and therefore, was asserted in violation of Fed. R. Civ. P. 11.**

54.     Carlotto suffered damages as a result of Defendant's violations of Title VII, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

**ANSWER: Denied as the same is untrue.  By way of further answer, state that that this allegation could not have been made in good faith, and therefore, was asserted in violation of Fed. R. Civ. P. 11.**

WHEREFORE, Defendants ask this Court to dismiss the claim brought against them, in its entirety and with prejudice, and to award such costs, including a reasonable attorney fee, as may be permitted by law.

**COUNT 2**
**RETALIATION IN VIOLATION OF MICHIGAN'S**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT**

55.    Carlotto repeats and incorporates all the previous allegations in his complaint.

**ANSWER:    Defendant similarly incorporates all prior answers.**

56.    Carlotto engaged in activity protected by Michigan's Elliott-Larsen Civil Rights Act when he, among other things, participated in the Pauly litigation, pursued his EEOC charge and this litigation, and opposed the discrimination and retaliation that Pauly suffered in Defendant's workplace.

**ANSWER:    Denied as the same is untrue.**

57.    Defendant knew about Carlotto's opposition and protected activity.

**ANSWER:    Denied as the same is untrue.  By way of further answer, state that that this allegation could not have been made in good faith, and therefore, was asserted in violation of Fed. R. Civ. P. 11.**

58.    Defendant treated Carlotto differently in connection with the terms and conditions of his employment and refused to permanently hire Carlotto for the chief of police position and the deputy chief of police position.

11

**ANSWER:    Denied as the same is untrue.  By way of further answer, state that that this allegation could not have been made in good faith, and therefore, was asserted in violation of Fed. R. Civ. P. 11.**

59.    There was a causal connection between Carlotto's protected activity and the adverse employment actions Defendant took against him.

**ANSWER:    Denied as the same is untrue.  By way of further answer, state that that this allegation could not have been made in good faith, and therefore, was asserted in violation of Fed. R. Civ. P. 11.**

60.    Carlotto suffered damages as a result of Defendant's violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

**ANSWER:    Denied as the same is untrue.  By way of further answer, state that that this allegation could not have been made in good faith, and therefore, was asserted in violation of Fed. R. Civ. P. 11.**

**WHEREFORE**, Defendants ask this Court to dismiss the claim brought against them, in its entirety and with prejudice, and to award such costs, including a reasonable attorney fee, as may be permitted by law.

**JURY DEMAND**

61.    Carlotto demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

**ANSWER:    Defendant denies that Plaintiff is entitled to a trial, as no issue presented creates any genuine issue that requires submission to a jury.**

**RELIEF REQUESTED**

62.     Plaintiff Pat Carlotto requests that the Court enter a judgment in his favor and against Defendant City of South Haven in an amount that will fully and fairly compensate him for all of his damages, losses, expenses, back wages, emotional distress, punitive damages, attorney's fees, litigation costs, and interest.

**ANSWER:    Admitted that Plaintiff has made such a frivolous demand, but denied as untrue that any such demand is warranted.**

63.     Carlotto also requests that the court grant him any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

**ANSWER:    Admitted that Plaintiff has made such a frivolous demand, but denied as untrue that any such demand is warranted.**

<u>**DEFENDANTS' AFFIRMATIVE DEFENSES**</u>

1.     Plaintiff's claims for equitable relief are barred by the doctrines of laches, estoppel and unclean hands.

2.     Plaintiff's discrimination and retaliation counts fail to state a claim upon which relief may be granted.

3.     Plaintiff's economic damages claims are barred in whole, or in part, by the After Acquired Evidence Doctrine.

4.     All employment actions regarding Plaintiff were taken for legitimate non-discriminatory and non-retaliatory reasons. These employment actions would have been taken regardless of Plaintiff's alleged protected class and/or alleged protected activity.

5.     All employment decisions made regarding Plaintiff were made in good faith and with the honest belief that they were legitimate non-discriminatory and non-retaliatory decisions.

6.     Plaintiff has failed to mitigate his damages.

7.    Plaintiff's Complaint is frivolous as defined by Fed. Civ. R. 11(b)(1)-(3).

8.    To the extent it can qualify as an affirmative defense, Plaintiff's counsel should be disqualified from representation as a necessary witness, given the admission in Allegation No. 18. In any event, Plaintiff's counsel is a necessary witness for purposes of establishing Plaintiff's allegations, given that Plaintiff himself was never called to testify or otherwise did actually participate in the underlying "litigation" that forms the basis of his retaliation claim.

9.    Defendants reserve the right to assert additional affirmative defenses as may become known through the course of discovery.

Respectfully submitted,

ROSATI, SCHULTZ, JOPPICH &
AMTSBUECHLER, P.C.

/s/ Andrew J. Brege_____
Andrew J. Brege (P71474)
*Attorney for Defendant*
822 Centennial Way, Suite 270
Lansing, MI 48917
(517) 886-3800
abrege@rsjalaw.com

Dated:  December26, 2025

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 26, 2025, I electronically filed the foregoing papers with the Clerk of Court, using the ECF system, which will send notification of such filing to the attorneys of record.

Respectfully submitted,

ROSATI, SCHULTZ, JOPPICH, & AMTSBUECHLER, P.C.

*/s/ Andrew J. Brege*_____
Andrew J. Brege (P71474)
*Attorney for Defendant*
822 Centennial Way, Suite 270
Lansing, MI 48917
(517) 886-3800
abrege@rsjalaw.com

Dated:  December 26, 2025